OPINION
{¶ 1} Eugene Murphy appeals from a judgment of the Greene County Court of Common Pleas, Domestic Relations Division, which terminated a shared parenting plan, named Sarah Murphy Neal the sole custodian and residential parent of the parties' children, and awarded parenting time to Murphy in accordance with the standard order. *Page 2 
 {¶ 2} Murphy and Neal divorced in 1995 and entered into a shared parenting plan for their two children, Shelley and Phillip. In December 2005, Neal moved to terminate the shared parenting plan. The trial court conducted a hearing in October 2006, at which the following evidence was presented.
 {¶ 3} Neal's evidence established, and Murphy admitted, that he had been involved in a violent altercation with some Antioch College students in front of their son in July 2005. The students were videotaping their skateboarding to fulfill a class requirement near a tennis court where Murphy and his son were playing tennis. When a skateboard came near the tennis court, a verbal altercation began and Murphy repeatedly hit one of the students with his tennis racquet. Murphy was convicted of misdemeanor assault as a result of this incident.
 {¶ 4} A process server also testified that, when he attempted to serve Murphy with a summons in October 2006, Murphy first refused service and slammed the door, then chased after him, shouting obscenities and threatening to "kick his ass" until Murphy's wife intervened to diffuse the situation.
 {¶ 5} Additionally, Neal and her husband, Paul Rekers, testified that there had been nasty verbal exchanges instigated by Murphy in front of the children on several occasions when the children were being exchanged for parenting time. Murphy's stepmother testified that Murphy had been critical of Neal in front of the children and was estranged from his father and her for reasons related to the custody dispute. The Yellow Springs Police Chief testified that the parties were "not strangers" to the police and that the department's involvement with the parties went back about a year.
 {¶ 6} Neal testified about various problems she had been having with Murphy, *Page 3 
including instances in which he had removed the children from school for medical treatment or other activities without notice to her. She also testified that Murphy did not inform her about medical treatment that the children received while in his custody and that the children were not permitted to call her from his home.
 {¶ 7} The guardian ad litem, Cythia Martin, who had had contact with the children for more than a year, testified that the children were very attached to both parents. She believed that both parents were involving the children too much with the litigation over the custody arrangement and that Neal had responded more effectively once this issue was brought to her attention. Martin further testified that Murphy had taken the children to a psychologist without her involvement or knowledge and without Neal's knowledge while the custody litigation was pending. She confirmed that communication between the parties was very poor and stated: "I can't say that these parties can communicate and truly do what would be a true shared parenting plan. I don't believe that is a possibility." She said that, if a sole-custody arrangement was implemented, she would recommend that Neal be the residential parent, with substantial visitation with Murphy in keeping with the children's wishes.
 {¶ 8} In April 2007, the trial court granted Neal's motion to terminate the shared parenting agreement due to the parties' inability to communicate and Murphy's anger issues. The court named Neal the sole custodian and residential parent and ordered visitation with Murphy pursuant to the Standard Order of Parenting Time. It also ordered Murphy to participate in a drug and alcohol assessment and counseling for anger management and to communicate with Neal by email.
 {¶ 9} Murphy raises two assignments of error on appeal. *Page 4 
 {¶ 10} "I. THE FINDINGS OF FACT OF THE TRIAL COURT PROVIDING THE COURT WITH A BASIS TO CONCLUDE THAT THE SHARED PARENTING PLAN OF THE PARTIES SHOULD BE TERMINATED ARE NOT SUPPORTED BY THE EVIDENCE IN THE RECORD. FURTHER, THE TRIAL COURT UTILIZED THE WRONG STANDARD FOR TERMINATION OF THE SHARED PARENTING PLAN"
 {¶ 11} Murphy claims that the trial court's findings were not supported by the record and that the court misapplied the law by finding a "change of circumstances," pursuant to R.C. 3109.04(E)(1)(a), instead of basing its decision on the best interest of the children.
 {¶ 12} R.C. 3109.04(E)(2)(c) addresses the termination of shared parenting plans. It permits the termination of a shared parenting plan on the court's own initiative or at the request of one or both parents if the court determines that shared parenting is not in the best interest of the children. The best interest of the children is the only criterion discussed in this section. There is no requirement in R.C.3109.04(E)(2)(c) that the court identify a change of circumstances. R.C.3109.04(E)(1)(a), which was cited by the trial court, applies tomodifications of any decree allocating parental rights and responsibilities, including shared parenting plans.
 {¶ 13} The trial court expressly found that it was not in the children's best interest to continue shared parenting because of Murphy's volatile behavior and anger issues, the breakdown in communication between the parents, and the children's frustration with being put in the middle of the conflict. Although the court also stated that Murphy's behavior constituted a change of circumstances, it is apparent from the court's judgment that the best interest of the children was at the forefront of its reasoning. Furthermore, a change of circumstances is an *Page 5 
appropriate factor to consider in determining the best interest of the children. Thus, we are unpersuaded that the court's reference to a change of circumstances prejudiced Murphy regarding the outcome of the case.
 {¶ 14} Moreover, there was ample evidence to support the trial court's conclusion that the termination of shared parenting was in the children's best interest. Murphy admitted his involvement in one violent altercation in front of his son, and there were other confrontations during the exchanges of the children. The parties obviously were not communicating in a manner consistent with shared parenting, as evidenced by the fact that Murphy was obtaining medical treatment for the children without Neal's knowledge. The children were in the position of having to communicate information between the parents, which was causing them stress. The trial court reasonably concluded that the parties' relationship had deteriorated to the point that the shared parenting arrangement was no longer workable or in the children's best interest.
 {¶ 15} The first assignment of error is overruled.
 {¶ 16} "II. "IN GRANTING APPELLANT THE STANDARD ORDER OF PARENTING TIME, THE TRIAL COURT FAILED TO PROPERLY APPLY SECTION 3109.051 OF THE OHIO REVISED CODE"
 {¶ 17} R.C. 3109.051(D) sets forth factors to be considered in granting parenting time. These include the relationship between the parent and child(ren); their geographic proximity and available time; the age, health, and safety of the children; the mental and physical health of all the parties; and any other factor bearing on the best interest of the children. Murphy contends that, had the trial court carefully considered these factors, it would not have reduced his parenting time to the Standard Order of Parenting Time. *Page 6 
 {¶ 18} The children spent a significant amount of time with Murphy under the shared parenting plan and expressed their desire to continue spending a lot of time with him. The parties also lived close together. Conflicting evidence was presented about how well the children were coping with their parents' divorce and the strain between them. Some of this evidence came from the guardian ad litem and the therapist that Murphy took the children to see without the knowledge of Neal, the guardian ad litem, or the court. On the other hand, Neal and her husband testified that the children exhibited some behavioral problems, such as lying, after spending time with Murphy and that they exhibited stress, such as nightmares. The evidence about Murphy's temper — including the violent confrontation with the students at Antioch and his verbal abusiveness to the process server and to Neal and her husband — raised legitimate concerns about Murphy's ability to provide a stable, safe, and appropriate environment for the children.
 {¶ 19} Although it is possible to draw different conclusions from the evidence presented, the trial court did not abuse its discretion in ordering the Standard Order of Parenting Time. The court was obviously concerned about Murphy's volatile behavior. It found that Murphy had "serious difficulties controlling his anger and is clearly not acting in the children's best interests." It also found that Murphy needed "professional intervention to gain control over his temper and develop coping skills." The court seemed to disapprove of Murphy's decisions to take the children out of school on multiple occasions without Neal's knowledge and his intimidating and denigrating conduct in Neal's presence. These concerns are reflected not just in the order of parenting time but also in the court's requirements that Murphy participate in a drug and alcohol assessment and anger management counseling and communicate with Neal via *Page 7 
email. Because the trial court heard the testimony and observed the parties' demeanors, we will not second-guess its assessment of these factual issues.
 {¶ 20} The second assignment of error is overruled.
 {¶ 21} The judgment of the trial court will be affirmed.
 FAIN, J. and DONOVAN, J., concur. *Page 1